**CROWN CENTER REDEVELOPMENT CORPORATION and Hallmark Cards Incorporated, Plaintiff-Respondent,**

v.

**OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, et al., Defendants.**

**No. WD 36791.**

Missouri Court of Appeals, Western District.

July 29, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1986.

Application to Transfer Denied Oct. 14, 1986.

Perry L. Fuller, Julian C. Campbell, Jr., Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., Kent Lowry, Jefferson City, for Columbia Cas. Co.

Henry J. Marquard, Kathleen McQeeny, William Spizzirri, Kralovec, Marquard, Doyle & Gibbons Chartered, Chicago, Ill., Charles A. Blackmar, Rich, Granoff, Levy & Gee, Kansas City, for Western World Ins. Co., Tudor Ins. Co., Excess Ins. Co., Ltd., Employers Mut. Ins. Co., Lexington Ins. Co., Granite State Ins. Co., Harbor Ins. Co., Nat. Surety Corp., Puritan Ins. Co., and Integrity Ins. Co.

Alvin D. Shapiro, Kansas City, J. Donald Lysaught, Weeks, Thomas & Lysaught Chartered, Kansas City, Kan., for Pine Top Policy Hel 1554.

Thomas W. Murphy, Nancy K. Caron, Haskell & Perrin, Chicago, Ill., Carl E. Laurent, Independence, for Pine Top Ins. Co., Centaur Ins. Co. and INSCO Ltd.

James K. Horstman, Barry L. Kroll, Anthony P. Katauskas, Lloyd E. Williams, Jr., Williams & Montgomery, Ltd., Chicago, Ill., Kent Lowry, Jefferson City, for Highlands Ins. Co.

Joseph B. Lederleitner, Pretzel & Stouffer, Chartered, Chicago, Ill., J. Kent Lowry, Hendren & Andrae, Jefferson City, for Federal Ins. Co.

G. Spencer Miller, Miller & Dougherty, Kansas City, Ronald A. Jacks, Paul W. Schroeder, Steven R. Gilford, James A. White, Isham, Lincoln & Beale, Chicago, Ill., for Northbrook Excess and Surplus Ins. Co.

Stephen A. Cozen, Robert R. Reeder, Susan M. Danielski, Cozen, Begier & O'Connor, Philadelphia, Pa., James F. Duncan, Watson, Ess, Marshall & Enggas, Kansas City, for Commercial Union Ins. Co. and Republic Ins. Co.

William H. Sanders, Sr., John Keith Brungardt, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for American Ins. Co.

Norman C. Kleinberg, Theodore V.H. Mayer, Hughes, Hubbard & Reed, New York City, Judith Whittaker, Kansas City, for Hallmark Cards, Inc. and Crown Center Redevelopment Corp.

Before TURNAGE, P.J., and NUGENT and LOWENSTEIN, JJ.

TURNAGE, Presiding Judge, and LOWENSTEIN, Judge.

Crown Center Redevelopment Corporation and Hallmark Cards, as intervenors, and Hyatt Corporation [1] filed petitions for declaratory judgment seeking a determination as to which insurers owed a duty to defend and indemnify and as to the priority among insurers. The court entered partial summary judgment finding the insurers in the Occidental line and Commercial Union line cover Hyatt, Crown Center and Hallmark, and allocated the defense funding and indemnity burdens. On appeal, Commercial Union, American, Columbia, Northbrook, Highlands, Pine Top, Insco, Centaur and Federal Insurance allege the court erred in its allocation and determination as to coverage.[2] Affirmed in part, reversed in part.

In 1977 Crown Center, a wholly owned subsidiary of Hallmark, began plans for the construction of a hotel. In connection therewith, Crown Center entered into a management agreement dated September 30, 1977 with Hyatt Corporation, operator of a chain of hotels. The agreement provided that Crown Center would design, construct, and finance the hotel on property owned by it while Hyatt would manage the hotel upon its completion in exchange for a share of the hotel's gross receipts.

The management agreement provided for how insurance on the project was to be obtained. Section 8.1 provided that Crown Center was to maintain at all times prior to the opening date comprehensive general liability and property insurance for the hotel protecting Crown Center and Hyatt. Section 8.2 provided that Crown Center was to maintain comprehensive general liability insurance on the hotel commencing on the hotel's opening date and continuing for 30 years.

Pursuant to this obligation, Hallmark obtained a line of insurance which will be referred to as the Commercial Union line. Commercial Union issued a $1 million primary liability policy to Hallmark and Crown Center as named insureds. This policy when it expired as of January 1, 1981 was replaced by the Commercial Union policy now at issue, coverage from January 1, 1981 to January 1, 1984. The Commercial Union policy provided comprehensive general liability coverage. The policy contains an "other insurance" clause which provides for how the loss is to be apportioned among insurers if other insurance exists.

---

1. Hyatt is not a party to this appeal.

2. This appeal generated over 3000 pages of record and 16 briefs.

The agent for Marsh & McLennan, Hallmark's insurance broker, requested Commercial Union to add Hyatt as an additional insured under the primary policy. Hyatt was named as additional insured under Endorsement # 38, which upon renewal of the policy became Endorsement # 18.

Hallmark also obtained excess insurance policies providing for $100 million in coverage. The first excess policy, issued by Commercial Union, covers Hallmark and Crown Center as named insured and Hyatt as additional insured. The remaining excess policies, issued by American, Republic and Continental are "following-form" policies, meaning the provisions of the underlying policy are incorporated by reference into the excess policies except where terms are specifically excluded. These policies contain variations as to payment of defense costs. The Commercial Union and Republic policies contain "other insurance" clauses, while the American and Continental policies follow the provisions of the primary policy.

Hyatt obtained a line of coverage which will be referred to as the Occidental line. Hyatt obtained a $1 million primary comprehensive general liability policy from Occidental, such policy effective February 1, 1981 to February 1, 1982. This policy replaced one previously issued by National Union. The policy provided comprehensive general liability coverage.

The policy named Hyatt as insured, and Hallmark and Crown Center were named as additional insureds by an insurance certificate dated June 8, 1981. The policy contains an "other insurance" clause which is similar to the "other insurance" clause in the Commercial Union policy.

Hyatt also obtained excess insurance policies, providing for $200 million in coverage. These policies, effective February 1, 1981 to February 1, 1982, provide coverage to Hyatt as named insured and to the insureds on the underlying policy. The policies are similar in their duty to indemnify, though vary in their duty to pay defense costs. Each contains an "other insurance" provision which makes it "excess" to other available insurance.

The following chart outlines the coverage available under the two lines of insurance.

| | OCCIDENTAL LINE | COMMERCIAL UNION LINE |
|---|---|---|
| Primary: | Occidental<br>Limit: 1 million | Commercial Union<br>Limit: 1 million |
| 1st Level Excess: | Northbrook<br>Limit: 25 million | Commercial Union<br>Limit: 10 million |
| 2nd Level Excess: | Baccala & Shoop Group<br> Pine Top<br> Centaur<br> INSCO<br>Total Limit: 25 million | American<br>Limit: 50 million |
| 3rd Level Excess: | Columbia<br>Limit: 25 million | Republic Group<br> Republic<br> Continental<br>Total Limit: 40 million |
| 4th Level Excess: | Highland Group<br> Highlands<br> Federal<br> Pine Top<br>Total Limit: 25 million | |
| 5th Level Excess: | Super Excess Group<br> Continental<br> Employers Mutual<br> Excess<br> Integrity<br> Lexington | |

Granite State
Harbor
National Surety
Western World
Tudor
Puritan
Total Limit: 100 million

---

On July 17, 1981 two elevated skywalks in the lobby of the Hyatt Regency Hotel collapsed, killing over 100 people and injuring over 200 others. As a consequence, numerous claims were filed against Hallmark and Crown Center, Hyatt, contractors, engineers and architects. *In re Federal Skywalk Cases*, 680 F.2d 1175 (8th Cir.1982), *cert. denied*, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982). The claims contain approximately 35 allegations of negligence, ranging from general negligence to breach of warranty and failure to properly construct and inspect.

Following the collapse, Hyatt, Hallmark and Crown Center notified their insurers. Representatives of Hallmark and Crown Center, Hyatt and Marsh and McLennan Agency consulted in order to determine the insurance coverage available for the claims. Occidental began to make settlement payments, however a number of insurers in the Occidental line claimed their coverage did not extend to Hallmark and Crown Center. Commercial Union denied that Hyatt was covered as an additional insured under its policy. Hallmark and Hyatt were faced with a variety of disclaimers of coverage from their insurance companies. In short, the insureds were unable to obtain the cooperation of all 25 insurers to settle the claims.

As a result, on October 9, 1981 Hyatt filed a declaratory judgment action naming as defendants the insurers in the two lines, and its insurance broker, Marsh & McLennan Agency.[3] Hyatt requested the court to declare that each insurer provide Hyatt coverage and declare that each insurer is required to indemnify and defend Hyatt in all suits seeking actual and punitive damages. Hyatt further requested the court to declare the applicability of exclusionary endorsements, that Hallmark and Crown Center were covered as additional insureds, and the priority among the insurance companies.

Hallmark and Crown Center obtained leave to intervene on November 30, 1981. Hallmark filed its petition and requested the court to declare that it was covered as an additional insured under the Occidental group and declare that each insurer is obligated to indemnify and defend Hallmark as to actual and punitive damage claims. Hallmark further requested the court to declare the order in which the insurers are to provide coverage.

On December 21, 1981 the trial court entered a pretrial order by which it restricted future discovery to four issues. The four issues were: (1) which policies provide coverage for the skywalk collapse, (2) which insurance companies are required to provide claimants a defense and in what order, (3) which insurance companies are liable for payment and in what order, and (4) which exclusions in the policies apply to disclaim coverage.

On March 23, 1982, after initial discovery, Northbrook filed a motion for partial summary judgment seeking resolution of the first three issues and a declaration that the Occidental line was excess to the Commercial Union line. On May 27, 1982

---

3. Hyatt and Hallmark as intervenor asserted claims of negligence against Marsh and McLennan for failure to obtain the coverage requested.

These claims were alternative in the event Hyatt and Hallmark did not otherwise prevail.

Hallmark and Crown Center filed a motion for partial summary judgment against Columbia Casualty seeking a declaration the Columbia policy covered them. The court conducted hearings on these motions and on October 7, 1982 entered an interlocutory order. On February 28, 1985 the court after hearing oral arguments entered final judgment. The court held that all insurers in the Occidental and Commercial Union line covered Hyatt, Hallmark and Crown Center, and that such coverage was concurrent. The court refused to consider extrinsic evidence in construing the insurance policies. The court held the "other insurance" clauses were mutually repugnant and must be disregarded. The court further held that Occidental and Commercial Union as primary insurers were required to defend and indemnify insureds on an equal basis, and the two excess lines of insurers were to share indemnity and defense costs on a pro rata ⅔–⅓ basis, reflecting the proportion of excess coverage afforded by each line.

Commercial Union, American, Columbia, Northbrook, Highlands, Pine Top, Insco, Centaur and Federal Insurance appeal the summary judgment and assert that the court erred in its determinations of coverage, in its allocation of the defense funding burden and indemnity burden, and in its refusal to consider extrinsic evidence.

## COMMERCIAL UNION APPEAL

### I.

Commercial Union filed a counter-claim in which it sought reformation of the policy issued by it to Hallmark and Crown Center with reference to an endorsement. Just prior to the opening of the Hyatt Hotel on July 1, 1980, Commercial Union added an endorsement to the general liability policy which it had issued to Hallmark and Crown Center. In this endorsement Hyatt was named as an additional insured. In addition, Hyatt obtained coverage for the hotel under the Hyatt master liability policy which at the time of the skywalk collapse was issued by Occidental.

Commercial Union filed an extensive offer of proof subsequent to the interlocutory order of October 7, 1982. Commercial Union offered to prove that all parties intended that the coverage provided to Hyatt as an additional insured under the Commercial Union policy was to be limited to accidents arising out of the ongoing construction of the hotel by Hallmark and Crown Center after July 1, 1980, the hotel's opening date. Commercial Union further contended that the Occidental policy was to provide Hyatt coverage for accidents arising out of hotel operations after July 1, 1980 and that the Commercial Union line was excess to the entire Occidental line. Commercial Union requested reformation of the policy to reflect this intent.

The trial court refused to grant a hearing on reformation and held in its summary judgment that Commercial Union was not entitled to reformation. The court reasoned that reformation would not alter its determination as to coverage because even if the policy were reformed, Commercial Union would be liable as its policy covered Hallmark and Crown Center for construction and design negligence which occurred prior to July 1, 1980. The court stated that the pleadings filed by those injured in the collapse alleged negligence on the part of both Hyatt and Hallmark and Crown Center. The court concluded that the allegations in those suits brought the accident within the coverage afforded to Hallmark and Crown Center under the Commercial Union general liability policy and within the coverage afforded to Hyatt under the policy issued by Occidental. If the policy were reformed the court would be presented with two lines of insurance covering the negligence alleged against Hyatt and Hallmark and Crown Center, and two lines of coverage with mutually repugnant other insurance clauses. This is the same situation which would face the court without the Commercial Union policy being reformed. Because the court would reach the same point without reformation as it would if reformation were granted, the court held that summary judgment was proper to deny reformation.

The essential facts bearing on reformation are not in dispute. Hallmark and Crown Center constructed the hotel and Hyatt had no connection with the construction of the building. The only liability Hyatt incurred was for occurrences after July 1, 1980.

The flaw in Commercial Union's argument is that it focuses on the addition of Hyatt as an additional insured under the general liability policy it issued to Hallmark and Crown Center. The fact is Commercial Union insured Hallmark and Crown Center against liability for construction and design negligence which occurred prior to the time Hyatt had any connection with the building. Commercial Union did not seek to reform its policy to remove any liability for construction and design negligence by Hallmark and Crown Center. To bring about the result Commercial Union seeks would require that Commercial Union be found to have no liability exposure to Hallmark and Crown Center for any construction and design negligence. Commercial Union never sought to reform its policy to eliminate that liability exposure.

Since Commercial Union was exposed by reason of the allegations that Hallmark and Crown Center were liable for construction and design negligence, the Commercial Union line of insurance was involved in the suits filed following the collapse. Because of the allegations of negligence as to Hyatt and Hallmark and Crown Center, the Commercial Union line was exposed to liability along with the Occidental line. In this situation it would not matter whether Hyatt was covered by the Commercial Union line or not. Both lines insured against the allegations made following the collapse. The fact that Hyatt might be found to be covered only for construction taking place after July 1, 1980 under the Commercial Union policy, if it were reformed, would not result in a single line affording cover-

age. Since Commercial Union covered the Hallmark and Crown Center liability alleged, the court was faced with two lines of coverage. This would require the court to make the same decision of whether one line was primary and to resolve the problem of the mutually repugnant other insurance clauses.[4]

 The court was correct in its conclusion that even if reformation were granted according to the prayer and theory of Commercial Union, the court would have been faced with the same problem of apportioning payment between two lines of insurance with both lines covering liability claims asserted in the suits filed following the collapse. The court was not required to go through the useless exercise of holding a hearing on Commercial Union's claim for reformation when to do so would result in the court being confronted with the same problem that it faced if the policy were not reformed. The denial of reformation was proper.

II.

 Commercial Union next contends that the court erred in finding the Commercial Union line and the Occidental line provided concurrent coverage for the liability arising from the skywalk collapse. Commercial Union argues that for two policies to be concurrent they must cover an identity of the insured interest and an identity of risk as well as subject matter. Cited in support of this proposition is *M.F.A. Mutual Insurance Co. v. Gulf Insurance Co.*, 445 S.W.2d 829 (Mo.1969). *M.F.A.* considered insurance on property and not liability. The court referred to the theory of apportionment where several insurance policies exist on the same property and the policies amount in the aggregate to more than the property's value. In such a case recovery is restricted to the actual loss.

4. Nor would reformation dictate that the Occidental line was primary and the Commercial Union line was excess to the entire Occidental line. This argument is based on the same premise that the Commercial Union policy only insured Hyatt against ongoing construction activity by Hallmark and Crown Center. The fact that the allegations of negligence following the collapse involved liability covered by both lines even with reformation required the court to decide priority between the lines or that they were concurrent, as it did.

*Id.* at 833[4, 5]. In *Clower v. Fidelity-Phenix Fire Ins. Co.,* 220 Mo.App. 1112, 296 S.W. 257, 260[1] (1927), the court stated that the law is well settled that additional insurance in violation of the terms of an insurance policy will void the policy since over insurance by concurrent policies on the same property tends to cause carelessness on the part of the insured and opens the door to fraud. *Clower* involved a fire insurance policy and not a liability provision. In Note, Concurrent Coverage in Automobile Liability Insurance, 65 Colum. L.Rev. 319 at 320 (1965), it is stated that the earliest attempt to avoid possible disputes between insurance companies over other insurance clauses took place in the field of property insurance. To prevent temptation to overinsure property it became common practice to provide in each policy that the insured could not obtain additional insurance from another company without the consent of the insurer. *M.F.A.* and *Clower* are illustrations of the rule applicable to property insurance and the identity rule urged by Commercial Union is the test applied in property insurance to determine if additional insurance has been procured in violation of a policy provision. It is surprising that Commercial Union would urge the application of that rule to this case which involves only liability coverage. The rules applicable to other insurance clauses in property insurance have no application in liability insurance. The problem of other insurance or excess insurance clauses as applied to liability coverage was fully explained in *Hardware Dealers Mutual Fire Insurance Co. v. Farmers Insurance Exchange,* 444 S.W.2d 583 (Tex. 1969). In *Hardware Dealers* the court took up the same arguments urged by Commercial Union as to why the Commercial Union line should be excess to the Occidental line. The court discussed the various approaches which have been taken to try to resolve the problem created by insurance companies engaging in the battle of draftsmanship to create more terms to avoid coverage. The other insurance clause problem has been created by the insurance companies and despite years of litigation the problem persists. The court concluded that all other insurance clauses should be ignored when they are mutually repugnant. *Arditi v. Massachusetts Bonding & Insurance Co.,* 315 S.W.2d 736 (Mo.1958) adopted that position in this state. This same situation exists *infra* in the discussion of allocation among the excess carriers.

Commercial Union points to the provision of Endorsement 18 which states "this endorsement is excess over any other valid and collectible insurance." This is exactly the type of other insurance clause which is contained in many policies and which creates the problem. Obviously if there are two policies which cover the same risk and each has a clause stating that the policy will not pay if there is other valid and collectible insurance, then the insured is left without coverage if full effect is given to both policies.[5] To remedy this problem the courts have adopted the rule that when both policies carry similar other insurance clauses all such clauses are held to be mutually repugnant and are thus disregarded. In *Arditi v. Massachusetts Bonding & Insurance Co.,* 315 S.W.2d 736, 743[6] (Mo.1958), the court found the other insurance clauses in all of the policies to be mutually repugnant and disregarded all of them. This is the rule in Missouri and the court clearly applied that rule in this case. The single clause in Endorsement 18 which provides that the endorsement is excess over other valid and collectible insurance does not solve the problem, but in fact creates it because the other policies contain similar clauses. None of the reasons advanced by Commercial Union in support of its argument that the Occidental line is primary and the Commercial Union line is excess are valid. The problem is simply one of mutually repugnant other insurance clauses. The court correctly concluded

---

**5.** This court answered the question of whether the policies covered the risk involved, the collapse of the skywalk at the Hyatt, in the previous section. The court determined the Commercial Union policy provided coverage for the loss, as does the Occidental line.

that on the basis of those clauses neither line would be primary and neither line would be excess, but both lines would cover the loss caused by the skywalk collapse.

## AMERICAN APPEAL

### I.

In its first two points American urges that the court should have received extrinsic evidence to determine the intent of the parties that the Occidental line was to be primary to the entire Commercial Union line. American also urges that there were material facts in issue which precluded disposition by summary judgment. The arguments advanced by American are essentially the same as those urged by Commercial Union in which Commercial Union contended that the parties intended that by Endorsement 18 Hyatt was insured under the Commercial Union policy only against liability for ongoing construction carried out by Hallmark and Crown Center.

American also contends the court should have admitted extrinsic evidence to resolve ambiguities in the various other insurance clauses. No ambiguity is pointed out by contending that any particular language contains an ambiguity. Without identifying the particular language contended to be ambiguous it is impossible to decide the point. Further, the clauses quoted in the brief do not appear to contain any ambiguity.

American advances in its second point the same argument made by Commercial Union that the Commercial Union policy should have been reformed to provide the coverage Commercial Union and American contend the parties intended by Endorsement 18.

All of these arguments by American are answered in the discussion of the arguments advanced by Commercial Union concerning reformation of the Commercial Union policy and no further discussion is required.

### II.

■■■ American contends the court erred in ordering it to pay defense costs. Columbia and Northbrook each filed a motion for summary judgment declaring that American was obligated to pay defense costs. The American policy contained Condition 4 which read:

*Payment of expenses.* Loss expense and legal expenses, including court costs and interest, if any, *which may be incurred by the Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings* shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in the investigation, adjustment and litigation. (Emphasis supplied).

In the October 7, 1982 order the court found that American had no duty to defend or pay defense costs. In the memorandum accompanying its judgment of February 28, 1985, the court held that its 1982 conclusion with reference to American's duty to defend was in error. It concluded that based on Condition 4, American had a duty to defend. The court drew an analogy between the provision of Condition 4 that American would only pay defense costs incurred with its consent with provisions in some liability policies which require the insurer to reimburse the insured for defense costs on the precondition that the insured first obtain the insurer's approval of the insured's choice of counsel. The court stated that in those situations it is uniformly held that consent by the insurer cannot be unreasonably withheld. For this reason the court held American could not unreasonably withhold its consent to the payment of defense costs.

It is apparent the court's analogy fails because in the court's example the obligation in the policy requiring the insurer to reimburse the insured for defense costs was fixed. The only consent needed from the insurer was as to the insured's choice

of counsel. Obviously in those situations the insurer would not be allowed to defeat an obligation by unreasonably withholding approval of certain counsel.

In this case the obligation of American to pay defense costs is neither fixed nor absolute. The obligation is plainly stated that American will pay costs which may be incurred by the insured with the consent of American. Thus, the entire obligation is conditioned on the consent of American and not simply the procedure by which the obligation is carried out.

The duty of an insurer to defend is contractual, and if there is no contract to defend there is no duty to defend.[6] *Westchester Fire Insurance Co. v. Rhoades*, 405 S.W.2d 812, 815[1] (Tex.App.1966); 7C Appelman, *Insurance Law & Practice* § 4682, at 27 (1979). Here the contract to defend was specifically limited to those costs which were incurred with the consent of American. There was no showing that American had consented to any defense costs and the court did not find that American had consented.

None of the parties advance an argument or authority which would deny American the right to rely on the provision of Condition 4 that American would only pay those defense costs to which it consented. Research has failed to disclose any case holding the provision invalid. Since the obligation to defend is contractual, American could validly provide that it would only pay those costs to which it consented.

An argument is advanced that Condition 4 is ambiguous, but no demonstration of ambiguity is made—just the assertion that it is ambiguous. This court finds no ambiguity in Condition 4, but finds that it is clear on its face.

There is also some suggestion that American gave its implied consent to the payment of defense costs. The trial court did not pass on that contention and this court will not review any propositions not expressly decided by the trial court. *Dyer v. General American Life Insurance Co.*, 541 S.W.2d 702, 706[10] (Mo.App.1976).[7]

The part of the judgment finding that American is liable for defense costs is reversed and the court is directed to enter judgment that American is not obligated to pay any defense costs except those which it has expressly consented to pay.

The remaining portion of this opinion deals with the appeals of the excess carriers in the Occidental line. Most all of these remaining issues are a part of the Columbia appeal, but since some issues have drawn different allies, the headings will be by subject matter.

## CHOICE OF LAW

Columbia and Federal question the trial court's application of Missouri law rather than Illinois law to its interpretation and construction of their insurance policies. Neither Occidental nor the other carriers in the Occidental excess line raised this point. Each policy is silent as to an effective choice of law by the parties. There has been no other expression of intent by the parties as to the applicable state law. Without indicating how application of Illinois law would change the result here, Columbia argues that because both it and Hyatt are Illinois corporations and the contract was made in Illinois, Illinois substantive law applies. Columbia primarily relies on the *Restatement (Second) of Conflict of Laws* § 188(2)(a) (1971) set out below. Cit-

6. The holding herein on the obligation to defend is limited to an excess policy with language expressly limiting or withholding the duty to defend. No view is expressed as to the duty to defend in other situations.

7. This court has dealt with the substantive argument raised regarding American's obligation to defend. It should be noted, however, that the only parties who sought to enforce American's defense obligation were Columbia and North-

brook. It is stated in 7C Appelman, *Insurance Law & Practice* § 4682, at 30 (1979), that only the insured, or its representative, can call upon the excess carrier for the performance of the duty to defend. It is clear third parties to the contract have no standing to make such a demand. Thus, Columbia and Northbrook actually had no standing to enforce any duty on the part of American to defend.

ing *Kellogg v. National Protective Insurance Co.*, 236 Mo.App. 837, 155 S.W.2d 512 (1941), Columbia states that Missouri courts, in determining choice of law questions, place primary importance on the place of contracting.

The trial court determined that Missouri law governs based upon both §§ 188 and 193 of the *Restatement (Second) of Conflict of Laws* (1971). Section 188 provides:

Law Governing in Absence of Effective Choice by the Parties

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contracts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

Section 193 provides:

Contracts of Fire, Surety or Casualty Insurance

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

In *Kennedy v. Dixon*, 439 S.W.2d 173, 181 (Mo. banc 1969), Missouri expressly adopted § 145 of the *Restatement (Second) of Conflict of Laws*, which embodies the principal contracts or most significant relationship rule as a means of determining the choice of law in *tort* cases. Courts have also referred to the most significant relationship rule in contract cases, incorporated in § 188 of the *Restatement (Second) of Conflict of Laws* and have used such language as "Missouri employs the criteria contained in § 188," *Brown v. Brown*, 678 S.W.2d 831, 833 (Mo.App.1984), and "Missouri uses the criteria found in § 188," *Nakao v. Nakao*, 602 S.W.2d 223, 226 (Mo. App.1980). *See also Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1267 (8th Cir.1975); *National Starch and Chemical Corp. v. Newman*, 577 S.W.2d 99, 102 (Mo. App.1978); *American Institute of Marketing Systems, Inc. v. Brooks*, 469 S.W.2d 932, 936 (Mo.App.1971).

If § 188 is not adopted already by implication, this court now adopts §§ 188 and 193 of the *Restatement (Second) of Conflict of Laws* in casualty insurance cases. Under the circumstances, the analysis used by the trial court seems appropriate. Section 188(2) sets out the factors to determine the most significant contacts. Section 188(3) points to § 193 which covers contracts of casualty insurance. Section 193 and comment b to that section emphasize application of the law of the state which the parties understood to be the principal location of the insured risk. Comment f to § 193 discusses multiple risk policies which insure against risks located in different states, as is the case here, *i.e.* insurance policies cover Hyatt hotels located in some 28 states. The *Restatement* approach would treat each insured risk as though it were insured by a separate policy and would apply the law of the state where the

risk was located. In the instant case, the location of the insured risk, the Kansas City Hyatt Regency, is in Missouri. *See Diamond International Corp. v. Allstate Insurance Co.,* 712 F.2d 1498, 1500–02 (1st Cir.1983). Applying the law of the state in which the insured risk is located rather than that in which the contract was made is further warranted when there exists a possibility the court would have to apply the law of numerous states in interpreting over 20 contracts which insure the identical risk. Damages occurred and the claims were filed in the forum state of Missouri. Missouri law should apply. *See Industrial Indemnity Insurance Co. v. United States,* 757 F.2d 982, 986 (9th Cir.1985).

## ADDITIONAL INSUREDS UNDER THE COLUMBIA POLICY

■ Columbia contends the court should not have entered summary judgment finding that Hallmark and Crown Center were additional insureds under the Columbia policy. The court found in its interlocutory order that Hallmark and Crown Center were additional insureds under the Columbia policy and reaffirmed that finding in its final judgment. The court found that Columbia had issued a following form policy which meant that its policy incorporated the terms of the policies under it. This eventually leads to the Occidental policy and the court held that Hallmark and Crown Center had been added to the Occidental policy as additional insureds and for that reason Hallmark and Crown Center were covered by the Columbia policy.

The Columbia policy names Hyatt as the insured. In its insuring agreement the Columbia policy provided "the provisions of the immediate underlying policy are incorporated as a part of this policy except ... any other provisions therein which are inconsistent with the provisions of this policy." The excess policies under Columbia contain the same provision and also list Hyatt as the named insured. None of the policies under Columbia down to Northbrook contain any definition of insured.

All of these policies ultimately go back to the Northbrook policy which contains a section on definition. In that section insured was defined to include "any insured (not being the named insured under this policy) included in the schedule of underlying insurance...." The Occidental policy was the underlying insurance to the Northbrook policy. Thus the term insured incorporated in the Columbia policy from the definition in the Northbrook policy was any insured under the Occidental policy.

The evidence is clear that Occidental issued Endorsement 7 to its policy which added Crown Center as an additional insured as of February 1, 1981, the effective date of the Occidental policy. This endorsement was not issued until after the skywalk collapse. In addition, on June 8, 1981, Marsh & McLennan issued a certificate of insurance which stated that Hallmark and Crown Center were included as additional insureds under the Occidental policy. The undisputed evidence was that Marsh & McLennan were authorized to issue this certificate by Occidental.

Columbia attacks the Occidental endorsement which added Crown Center on the grounds that the endorsement was not issued until after the loss and makes the argument that if that endorsement is upheld it would create an unlimited right in a primary carrier to add any entity as an insured after a loss occurred and in that manner bind the excess carrier. Columbia's argument fails because all of the evidence demonstrates that Hallmark and Crown Center were actually accepted by Occidental as additional insureds prior to the loss. This goes back to the management agreement between Crown Center and Hyatt which provided that Crown Center as the owner of the hotel was to maintain comprehensive general liability insurance on the Hyatt Hotel for the benefit of Crown Center and Hallmark as the named insureds and Hyatt as an additional insured. It will be recalled that Hyatt obtained the comprehensive general liability insurance on the hotel in fulfillment of that agreement. There is no doubt from the

evidence that Hallmark and Crown Center were covered by the Occidental policy and this is borne out by the endorsement which Occidental issued. Neither Occidental nor any excess carrier except Columbia, disputes the fact that Hallmark and Crown Center were insured under the Occidental policy. Not only is the judgment of the court supported by evidence, there is no material issue of fact concerning the issue raised by Columbia which would preclude the entry of summary judgment. Suffice it to say the court had before it all the policies and endorsements and by its correct actions on the evidentiary rulings to alter or change those provisions, all that remained was the legal determination of the alignment of the party's and apportionment of the settlements. Rule 74.04(e).

Columbia attacks the certificate issued by Marsh & McLennan on the ground that Columbia had denied Marsh & McLennan authority to issue a certificate stating that Hallmark and Crown Center were insured under the Columbia policy. That argument is of no avail because it was not necessary for Columbia to extend authority for the issuance of the certificate in order to constitute Hallmark and Crown Center as insureds under the Columbia policy. This for the reason that the evidence showed they were covered by the Occidental policy and the following form language of Columbia and the intervening excess carriers cause Hallmark and Crown Center to be included as insureds under the Columbia policy. *Empire Fire and Marine Ins. Co. v. Duran*, 26 Ariz.App. 329, 548 P.2d 422, 424[2] (1976).

Columbia further contends that there was a material issue of fact concerning the date on which Marsh & McLennan issued the certificate. The precise date on which the certificate was issued is immaterial because there is no dispute in the evidence that Marsh & McLennan had the authority of Occidental to issue the certificate. For that reason the certificate was valid from February 1, 1981 regardless of the date on which it was issued.

Columbia contends that the court reformed the Columbia policy to include Hallmark and Crown Center as insureds. The court did not reform any policy to include Hallmark and Crown Center as additional insureds. The court followed the reasoning set out above and found that Hallmark and Crown Center were covered as insureds under the Columbia policy.

In addition, the evidence included a letter written in December of 1981 by the Senior Vice President for Claims of Occidental concluding that Hallmark and Crown Center were additional insureds under the Occidental policy. In addition to the evidence set out above the letter stated that Northbrook had accepted Hallmark and Crown Center as additional insureds under their policy by issuance of their certificate of insurance dated May 21, 1981. By the following form language in the Columbia policy such act on the part of Northbrook in the absence of any other evidence would be sufficient to support a finding that Hallmark and Crown Center were additional insureds under the Columbia policy.

The court correctly entered summary judgment finding that Hallmark and Crown Center were additional insureds under the Columbia policy.

## PRO RATA ASSESSMENT OF LIABILITY AND DEFENSE COSTS BASED UPON TOTAL OF POLICY LIMITS IN THE TWO EXCESS LINES

The apportionment of liability among the excess carriers in the Occidental line forms the next issue on appeal. Once the $1 million of primary insurance was exhausted on the first Commercial Union and Occidental policies, the issue of which excess company or companies were obligated to begin paying and in what amounts was presented. The trial court took the $122 million total paid out in liability claims and ran up each of the two lines, ⅔ for Occidental and ⅓ for Commercial Union. This ratio was based upon the $200 million total limits of liability in the former and $100 million in the latter. The circuit court judgment found mutually repugnant and

gave no effect to the "other insurance" clauses found in all the policies. As explained earlier, these clauses inserted in all the contracts would result in that company paying either nothing or paying after another company that insured the same risk. The costs of defense were assessed by the same formula. Starting with Northbrook, the first level of excess, some $80 million was assessed. The companies in the Occidental line ask for a reversal based upon the use of the pro rata approach. Columbia and Highlands suggest a layer by layer approach where each layer's limits would be exhausted, while Northbrook, Pinetop, Centaur and Insco prefer equal assessment of $60 million between the Occidental and Commercial Union lines. In considering this point several preliminary statements or "givens" in insurance law and of facts in this case are presented:

1) In this case the situation is most unusual since all the insurance, including these appealing excess line carriers, is concurrent. Under Commercial Union's second point it was determined that the two insureds, Hyatt and Hallmark-Crown Center were effectively insured by both lines starting with both primary policies.

2) The facts in the cases constituting authority involve automobile liability and at most contain only two or three insurance companies with other insurance clauses where the central issue is which are to be considered primary and which excess. With numerous carriers here, some of whom had multiple policies, it would create a Tower of Babel to examine each policy separately and attempt to reconcile apportionment of responsibility.

3) If court approval were given to all "other insurance" clauses the insured would end up with little or no coverage.

4) In order to prevent the result in 3), the courts must devise an allocation formula to fund the loss.

5) In this case the financial loss from the human loss is staggering; fortunately the amount of insurance exceeded the settlements and verdicts.

6) For years other courts have chided insurance companies about the necessity of other insurance clauses in *liability* insurance contracts—the *only* perceived explanation for their inclusion is to limit the amount of money the insurer may have to pay on a claim. *State Farm Fire and Casualty Co. v. LiMauro*, 65 N.Y.2d 369, 492 N.Y.S.2d 534, 537, 482 N.E.2d 13, 16 (N.Y.1985).

Basically there are three types of other insurance clauses and they become significant where multiple coverage exists and each policy contains one of these clauses: 1. "Pro rata"—which limits the liability of the insurer to a proportion of the total loss, 2. "Excess"—the policy becomes excess or pays after other policies, and 3. "Escape"— the insurer seeks to escape all liability. *Note, Colum.L.Rev., supra.* This example of an excess clause taken from the Highlands Policy is similar to several in the Occidental line.

> If other valid and collectible insurance with any other Insurer is available to the insured covering a loss also covered by this Policy, other than Insurance that is in excess of the insurance afforded by this Policy, the Insurance afforded by this Policy shall be in excess of and shall contribute with such other insurance.

These other insurance clauses were to keep insureds from overinsuring and profiting from a property damage loss. In the area of liability coverage the need to curtail fraud is not present. *Carriers Insurance Co. v. American Policyholders' Insurance Co.*, 404 A.2d 216 (Me.1979); *Note, Colum. L.Rev., supra.* There is little likelihood the owner and operator of a hotel would obtain several policies with large amounts of insurance and then stage an accident to allow inordinate pay outs to the unfortunate victims.

As our courts have noted, to give literal effect to escape or excess clauses would result in the absurdity of neither policy covering the loss. *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.*, 594 S.W.2d 950, 958 (Mo.App.1980). Missouri courts

have declared these clauses mutually repugnant and held the multiple insurers to provide primary coverage, and their liability prorated in proportion to the amount of insurance provided in their policies. *Arditi, supra,* 315 S.W.2d at 736; *National Indemnity Co. v. Liberty Mutual Insurance Co.,* 513 S.W.2d 461 (Mo.1974); *Note, Colum.L.Rev., supra,* at 322 and 325. This process will not, however, negate language clearly describing coverage as final or an umbrella policy, and make such coverage share with other excess policies. *State Farm v. LiMauro, supra,* 492 N.Y.S.2d at 537, 482 N.E.2d at 18.

Most of the appellate decisions concern the situation where several insurers had what would be primary coverage of the same risk. In the automobile liability field this would occur where separate policies covered drivers, passengers, garagemen (repairers), owners (car dealers), lessors and lessees, businesses, and so on. In those situations the companies sought to examine the "other insurance" aspects of their policy to literally pay none, part or be excess. In the case before this court there were two primary carriers whose policies were for less than the loss. The court, while declaring the insurance procured by the owner and the tenant concurrent, had both primary policies pay out. The aggrieved excess carriers here want to move to the back of the line or simply pay out less and reallocate the difference to other excess carriers. The effect of Judge O'Leary's ruling was to make all these excess companies proceed without other insurance clauses. That ruling is correct.

In *Hardware Dealers Mutual Fire Ins. Co. v. Farmers Insurance Exchange, supra,* the Texas court was faced with a defendant who was test driving a dealer's auto. The driver's father was insured with Farmers, the dealer was covered by Hardware. The Farmers policy had an excess other insurance clause. Hardware had a very specific escape clause. In resolving the declaratory judgment suit between the insurers the court noted the use of other insurance clauses in automobile insurance and found it was merely to hedge the coverage being given by a company in a situation where the insured wanted more coverage. 444 S.W.2d at 586. The court stated that such clauses were not inserted by the companies to cut down on the chance of fraud on damage to property. *Id.* The court disregarded both other insurance clauses and held the reasonable result was to pro rate as between the two companies on the basis of the obligation each company had to defend, which happened to be the same since both policies had the same limits. *Id.* at 590. The court in *Union Insurance Co. v. Iowa Hardware Mutual Insurance Co.,* 175 N.W.2d 413, 415 (Iowa 1970), relied on *Hardware, supra.* It called unconscionable the result of giving credence to other insurance clauses which left the insured on the sideline with no coverage. The clauses were ignored, and as between the two insurer's the loss was pro-rated in proportion to the amount of the policies. *Id.* at 419. In *Werley v. United Services Automobile Association,* 498 P.2d 112, 117 (Alaska 1972), the court eschewed the circular reasoning involved in trying to reconcile the myriad of other insurance clauses, declared them repugnant and held that where the loss was less than the policy limits, the loss should be prorated. *See also Liberty Mutual Insurance Co. v. Pacific Indemnity Co.,* 579 F.Supp. 140 (W.D. Pa.1984); *United States Fidelity & Guaranty Co. v. Slifkin,* 200 F.Supp. 563 (N.D. Ala.1961); *Farm Bureau Mutual Insurance Co. v. Horace Mann Insurance Co.,* 131 Mich.App. 98, 345 N.W.2d 655 (1983); *State Farm Mutual Auto Ins. Co. v. General Mutual Ins. Co.,* 282 Ala. 212, 210 So.2d 688 (1968). Other decisions where proration was used have suggested the insurance carriers could uniformly *agree* as to apportionment as long as the insurance buyer received all it bargained for. *Dairyland Insurance Co. v. Drum,* 193 Colo. 519, 568 P.2d 459 (1977); *Kirkland v. Ohio Casualty Insurance Co.,* 18 Wash.App. 538, 569 P.2d 1218 (1977).

Some contend that the policy limits form an arbitrary and inequitable means of apportionment, *Carriers, supra,* because the

cost of insurance does not increase proportionately with the policy limit, *Reliance Insurance Co. v. St. Paul Surplus Lines Insurance Co.,* 753 F.2d 1288 (4th Cir. 1985). Others suggest an approach that would prorate the loss "equally" up to the limits of the lower level or layer policy with any remaining loss being paid from the larger policy up to its limits. *Ruan Transport Corporation v. Truck Rentals, Inc.,* 278 F.Supp. 692 (D.Colo.1968); *Mission Insurance Co. v. Allendale Mutual Insurance Co.,* 95 Wash.2d 464, 626 P.2d 505 (banc 1981); *Liberty Mutual Insurance Co. v. Home Insurance Co.,* 583 F.Supp. 849 (W.D.Pa.1984). As can be seen by the configuration of the companies in this case, the lines for the owner and tenant and the unequal policy amounts, any attempt to use this "equal" method by going through all the excess carriers and exhausting each level or layer leaves unintended gaps. Referring back to the chart outlining coverage in the prior portion of the opinion, it becomes clear the layers of each line have different amounts and start at different points, making any comparison of lines meaningless.

Either the prorata by lines method, or the equal lines method or equal exhaustion by layer may be deemed arbitrary or mechanical. Although simplicity in operation of a formula should not be the reason for selecting one over the other, this court cannot fault the trial court for using the prorata method under the facts in this case. The opinion in *Dairyland, supra,* states that where the insurer's draft is no help, the court ordered method of proration cannot be condemned merely because the insurer with the lower limit (here the Commercial Union line) will always benefit. 568 P.2d at 463. There will be "winners" and "losers" under any method chosen. That no one method has been universally adopted and approved shows there is no one perfect or magical solution. If both lines were assessed equally, the Occidental excess carriers would pay less. Also, Columbia's suggested layer by layer approach would expose it to $3.8 million as opposed to the full $25 million under the judgment.

By contrast, American under the ⅔–⅓ formula paid $30 million and under a layer approach it would have been subject to $50 million.

Missouri has judicially utilized the pro rata method. *Arditi, supra,* 315 S.W.2d at 743; *National Indemnity v. Liberty Mutual, supra;* and this court endorses that method here. In *Arditi* the plaintiffs were passengers on a bus struck by a Shell Oil tank truck (insured by Travelers) being driven by an employee of the Brooks Company (insured by Massachusetts). Brooks had repaired the truck and was returning it to Shell. Both insurance companies objected to the trial court's pro ration on policy limits of the loss where other insurance clauses were in each of their policies. The ruling was affirmed by the supreme court.

The pro rata method is succinctly described in *Buckeye Union Insurance Co. v. State Automobile Mutual Insurance Co.,* 39 Ohio St.2d 213, 361 N.E.2d 1052, 1054–55 (1977).

> This method of proration "assures indemnification for the insured up to the maximum amount of coverage afforded by each policy," and it takes into consideration the respective liabilities that the two insurers would have incurred.

*See* Annot., 69 A.L.R.2d 1122.

As stated earlier, solution to the other insurance situation has fallen on the courts rather than the insurance industry's arbitration mechanism, *State Farm v. LiMauro, supra,* 482 N.E.2d at 16. If the insurance industry desires another result it can uniformly draft contracts to avoid judicial determination. *Indiana Insurance Co. v. American Underwriters, Inc.,* 261 Ind. 401, 304 N.E.2d 783 (1973). The companies still seem to prefer to write "other insurance" clauses that will benefit the company and when a conflict appears with other contracts, plead for favorable court allocation. As far back as 1974 courts have been admonishing insurance companies that "the time has come to halt the continuing draftsmanship battle...." *State Farm Mutual Automobile Insurance Co. v. United*

*States Fidelity and Guaranty Co.*, 490 F.2d 407, 411 (4th Cir.1974).

The court rules the method of apportioning liability among the excess carriers pro rata by line to the extent of the total coverage in the line was correct. The allocation of defense costs on the same apportionment as liability was also correct. *General Accident Fire & Life Assurance Corp. v. Continental Casualty Co.*, 287 F.2d 464, 468 (9th Cir.1961). The trial court cannot be faulted for rejecting the "layer by layer" consideration proposed by Columbia and Highlands. The court was not at fault in failing to divide equally between the excess carriers of the two lines, as suggested by Northbrook and others. Each primary company made the other an insured. All the excess carrier's from each line adopted the terms of the primary carrier. The trial court declaring the two lines concurrent reflected what the parties did contractually. All the companies agreeing to insure the risk at the hotel should pay for such losses. All the clauses as to other insurance being mutually repugnant, pro ration of such liability along total policy limit of the two lines was fair. The point is denied.

## LIABILITY–FAULT
## ALLOCATION TRIAL

Columbia and Highlands contend the trial court erred in denying a fault allocation trial. They present their arguments for a liability trial to determine each insurance company's payment obligation without supporting case authority. The other insurance companies have made no such request and Hallmark and Crown Center are opposed to such a trial. Proposing a trial to determine liability among the insureds, architects, engineers, and contractors is but a back door attempt to avoid the determination the coverage of both lines was concurrent and to escape liability under any theory of allocation. This point has been addressed and ruled adversely to Columbia and Highlands. The trial court noted many correct reasons for declining to conduct a fault allocation trial. Only one need be discussed.

Occidental provided the primary policy for the Hyatt and Occidental line. These policies made Hallmark and Crown Center additional insureds. Likewise, the Commercial Union line, which provided coverage for Hallmark and Crown Center, made Hyatt an additional insured. The policies in both lines were general comprehensive, covering all hazards and risks. Though the language in the various policies was not identical, the individual policies provided the broadest form of coverage available to the insureds. Columbia's attempt to characterize one line of coverage as specific and the other as general is not well taken. The policies did not restrict losses to specified risks but covered all hazards and risks at the hotel located on Hallmark and Crown Center property. Contracting to cover those risks should pay all bets when the injuries occur at the hotel and the innkeeper and landowner are sued. To permit insurance companies to seek a jury determination as to allocation of fault for the tragedy goes against the grain and certainly the spirit of what they contracted to do—pay for losses.

It is abundantly clear from the policies what type of operation the insurance companies were covering. Columbia, Highlands, and the other companies in the Occidental line knew exactly what risk they were insuring against and will not now be permitted to renege on the insurance contract. Their cited cases are inapposite to the facts here. *Employers Mutual Casualty Co. v. Kangas*, 310 Minn. 171, 245 N.W.2d 873 (1976), involved a comprehensive general liability policy insuring a portable welding business. The court found the insured's act of shooting off fireworks several hundred feet from his welding truck was not within the scope of coverage. *Id.* at 877. *Gentry v. Yorkshire Insurance Co.*, 192 S.C., 125, 5 S.E.2d 565 (1939), involved two carriers who disputed coverage of a loss resulting from two separate causes, both of which were separately insured. *National Hills Shopping Center, Inc. v. Liberty Mutual Insurance Co.*, 551

F.2d 655 (5th Cir.1977), involved policy provisions specifically excluding certain risks.

The trial court correctly relied upon *Home Insurance Co. v. Certain Underwriters at Lloyd's London,* 729 F.2d 1132 (7th Cir.1984), which dealt with a comprehensive policy and a policy limiting coverage to risks created by the faulty design of a petroleum refining machine. After an explosion occurred, the injured party sued alleging negligent design, construction and operation. After the comprehensive carrier settled with the injured party, it sought indemnity from the other carrier. That insurer denied any responsibility to indemnify because its policy insured only against claims of faulty design. *Id.* at 1133–34. The court noted it was impossible to ascertain upon what ground the parties settled and concluded both policies were applicable to the claim. *Id.* at 1134. The court further granted that there was no way to divide the settlement figure into components, representing particular theories of recovery, and it could assume that the plaintiff could have prevailed on a defective design claim. *Id.* The insurance coverage applied to the casualty in the instant case, and neither the insureds nor anyone else should have the burden of demonstrating legal liability as between the insurers. *See United States Steel Corp. v. Hartford Accident and Indemnity Co.,* 511 F.2d 96, 99 (7th Cir.1975). A fault allocation trial is not required and this point is overruled.

### HIGHLANDS' DEFENSE

■ The next issue concerns a gap in defense coverage in the Occidental excess line. Columbia's policy provided for liability coverage of $25 million excess over $51 million. But the Columbia policy specifically excluded Columbia's duty to defend, stating: " 'Loss' does not include investigation, adjustment, defense or appeal costs and expenses nor costs and expenses incident to any of the same, notwithstanding that the underlying insurance may provide insurance for such costs and expenses." The Highlands Group, comprised of Highlands, Federal, and Pine Top, succeeded

Columbia in the Occidental excess line. Their policies provided for liability coverage of $25 million excess over $76 million. While the trial court determined Federal and Pine Top had no contractual duty to defend, it did find Highlands had a duty to defend. Because Columbia's policy provided for no defense coverage, the court concluded the gap created as a result must be filled by Highlands. The net result of this ruling, to which Highlands takes exception, is that Highlands' duty to defend commences prior to the exhaustion of the liability limits of the underlying insurance.

The issue presented may be stated as follows: Where an insurance company, which is part of a line of insurance, provides indemnity coverage but specifically eschews defense obligations, is the next carrier in the line that provides defense coverage required to pay defense costs for the preceding liability phase as well as its own liability phase?

As already held in this opinion an insurer's duty to defend is purely contractual, *Westchester Fire Insurance Co. v. Rhoades, supra,* 405 S.W.2d at 815, and is separate from the contractual obligation to indemnify. *State Farm Fire and Casualty Co. v. Huyghe,* 144 Mich.App. 341, 375 N.W.2d 442, 443 (1985). Under this principle, Columbia's duty to defend is excused because its contractual agreement with Hyatt so provided. The difficult question remains whether the insured who purchased a policy without defense coverage should fill the gap by paying defense costs or whether the next excess insurer that provides defense coverage (Highlands) should be required to fill the gap.

The trial court found this situation analogous to situations in which a primary carrier either denies coverage or is bankrupt. The excess carrier is then obligated to defend. The same is true when an underlying excess carrier improperly refuses to assume a defense. This court is not persuaded to afford such a remedy to a sophisticated insured such as Hyatt when it purchased a sizeable policy stating the insurer had no duty to defend. The situation here

is not congruent with an underlying insurer refusing to defend or declaring bankruptcy to the detriment of the insured customer.

The factual posture here is more akin to *Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 640 P.2d 764, 180 Cal.Rptr. 628 (banc 1982). In *Pisciotta*, the insured took out a primary liability policy on his boat. He also obtained an excess policy through another insurer. The insured allowed the primary policy to lapse and replaced it with a different policy which provided lower limit coverage and contained a family member exclusion not included in the original primary policy. These two changes created a gap in coverage between the primary and excess policies. A boating accident involving a stepson of the insured occurred the day the new policy became effective. The new primary policy only partially covered the loss. *Id.* 180 Cal.Rptr. 628, 640 P.2d at 766–67. The California Supreme Court held the insured created the gap in coverage, and the insured, not the excess carrier, had to bear the loss. *Id.* 180 Cal.Rptr. 628, 640 P.2d at 771. The *Pisciotta* rationale is adopted here. There was no language in the Highlands policy requiring it to fill in defense gaps left by the Columbia policy. Therefore that portion of the trial court's judgment contained in part (9) is reversed. On remand, the court shall enter judgment against the insureds for the pro rata defense costs that would have been borne by Columbia had Columbia had a contractual duty to defend.

### COLUMBIA AND FEDERAL ON DEFENSE COSTS

In a separate point, Columbia, joined by Federal, disputes the allocation of defense costs on a pro-rata basis between the lines. The remaining excess carriers in the Occidental line who are involved in this appeal have combined their complaints concerning allocation of defense costs with their point seeking a reversal of the trial court's allocation of liability payments. Again, as to excess carriers the judgment ordered liability payments and defense costs pro rated on a ⅔ (Occidental line) –⅓ (Commercial Union line) basis. Columbia proposes the trial court should have allocated defense costs on a layer by layer basis rather than on an aggregate line by line basis. It says the line by line method ignores the contractual undertakings of the individual insurers, some of whom, like Columbia, have no obligation to defend. Columbia proposes an allocation of defense costs *equally* on a layer by layer basis.

Not surprisingly, Federal does little more than echo Columbia's argument. Federal does not contest the trial court's ruling that it had no contractual duty to defend. However, without further explanation Federal states "[a]n improper allocation of defense costs could impact on how and when a given policy limit is exhausted."

Under the judgment in this case, neither Columbia nor Federal has any obligation to *defend.* No party to this appeal contests this ruling. As such, Columbia and Federal are in no position on appeal to complain about the pro rata allocation of defense costs among companies that do have a contractual duty to defend. If a party's interest is unaffected by resolution of an issue, it has no standing to raise it. *State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 227 (Mo. banc 1982). Similarly, Rule 84.13(b) precludes an appellate court from reversing any judgment unless it finds trial error committed against the appellant materially affected the merits of the action. *See Superior Outdoor Advertising Co. v. State Highway Commission of Missouri,* 641 S.W.2d 480, 483 (Mo.App. 1982). As to the court's ruling on allocation of defense costs, neither Columbia nor Federal, who will never pay any defense costs, is in a position to complain how others will pay. As to these two companies this point is dismissed.

The judgment of the trial court is affirmed except: 1) that portion denominated as (7) concluding American has a duty to defend, which is reversed and remanded with directions to enter judgment that American is not obligated for defense costs except those which it has expressly consented to pay; and 2) that portion denom-

inated as (9) ordering Highlands to assume the defense costs when Columbia is on line for liability, which is reversed and remanded with directions to enter judgment that defense costs while Columbia is on line are to be borne by the appropriate insureds.

Costs are to be divided as follows: 10% each by Commercial Union, Republic, Northbrook, Federal, Pinetop, Centaur, Insco, and Columbia, 6.67% each by American and Highlands, and 6.66% for Crown Center and Hallmark.

NUGENT, J., concurs.