The HOME INSURANCE COMPANY, Plaintiff-Appellee,

v.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON, not a corporation, et al., Defendants-Appellants.

No. 82–2640.

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1983.

Decided March 19, 1984.

Rehearing Denied May 2, 1984.

Richard E. Mueller, Lord, Bissell & Brook, Chicago, Ill., for defendants-appellants.

Donald M. Haskell, Haskell & Perrin, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, ESCH-BACH, Circuit Judge, and WYATT, Senior District Judge.*

ESCHBACH, Circuit Judge.

This case involves a dispute over which insurance company or companies are responsible for paying the $290,000 that it cost to settle a personal injury suit. We hold that the plaintiff and defendants must share the cost. Accordingly, we reverse the judgment of the district court and remand the case for further proceedings.

## I.

On September 17, 1971, an explosion occurred at a Powerine Oil Company plant in California. The source of the explosion was a system known as a "Lomax Hydro-cracking Unit," which was designed by Universal Oil Products ("UOP") and constructed by Powerine under UOP's direction. James R. Pendergraft, an employee of Powerine, was seriously injured in the explosion. On March 3, 1972, he filed in California an action naming UOP as one of the defendants. Pendergraft alleged that UOP "negligently and carelessly designed, assembled, controlled, manufactured, constructed, repaired, tested, and maintained" the Lomax Hydrocracking Unit.[1]

UOP, through its insurance broker, gave notice of the suit to two of its insurers—Royal Indemnity Company ("Royal") and The Home Insurance Company ("Home"). Royal had issued to UOP a "Comprehensive General Liability" policy limited to $100,000 per person per occurrence. Home had sold to UOP an "Excess Liability Policy," which limited Home's liability to $5,000,000 per occurrence. Pursuant to the terms of its policy, Royal assumed the primary responsibility for UOP's defense.

Pendergraft's case finally went to trial in late 1975. Recognizing the extent of UOP's possible liability, Royal and Home decided to seek a settlement. To this end, Home sought the participation of another group of UOP's insurers, collectively referred to as the "British Insurers." The British Insurers had issued to UOP "Architects and Engineers Professional Indemnity" policies. These policies, which were written in three layers, contained a $100,000 deductible provision and a limit of $500,000 per claim.[2] Moreover, the British Insurers provided coverage "Limited to Design of Petroleum Refining Processes Only."

The British Insurers, denying any responsibility to indemnify, refused Home's demand to participate in the settlement. Nevertheless, the Pendergraft case against UOP was settled for $390,000, with Royal paying $100,000 and Home paying the balance. Home subsequently brought this diversity action, governed by Illinois law, against the British Insurers. Home sought $290,000, the amount paid by Home to settle the Pendergraft suit, plus prejudgment interest. In a series of three orders, the district court agreed with Home and entered a final judgment against the British Insurers in the amount of $385,410. The British Insurers appeal.

## II.

Few areas in the field of insurance law give courts and parties more difficulty than that of duplicating or overlapping insurance. *See* 8A Appleman, *Insurance Law and Practice* § 4906 (1981). In asserting extreme and unsupported positions, the parties only add to the problem. To rationalize the case, we will begin by considering the British Insurers' arguments that they bear little or no responsibility for the $290,000 paid by Home to settle the Pendergraft suit.

---

* The Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, sitting by designation.

1. The Pendergraft complaint was framed in five counts with the first three alleging that UOP negligently or defectively designed the Lomax Unit and its components such as valves, pipes, gauges, and compressors.

2. The British Insurers provided additional layers of coverage but, to date, they have not been placed in the record.

### A.

■ An equitable action for contribution lies when one insurer pays a debt shared by other insurers. *See Royal Globe Insurance Co. v. Aetna Insurance Co.,* 82 Ill.App.3d 1003, 1005, 38 Ill.Dec. 449, 451, 403 N.E.2d 680, 682 (1980). There can be no possibility of contribution where only one policy covers the particular loss sustained or liability incurred. *See Vance Trucking Co. v. Canal Insurance Co.,* 395 F.2d 391, 396 (4th Cir.1968); 16 *Couch on Insurance* § 62.152 (2d ed. 1983). The British Insurers, in their appellate brief, contend that they need not contribute because all the theories that Pendergraft pursued "fell exclusively within the coverage of Royal's and Home's Comprehensive General Liability policies."

The British Insurers first asserted this position late in the litigation. In its order of August 27, 1980, the district court stated that it was legally undisputed that the policies issued by the British Insurers embraced the Pendergraft claim. Only later did the British Insurers contend that their policies did not cover the type of claim made by Pendergraft. The district court rejected this contention and termed it an "afterthought." At oral argument in this court, the British Insurers modified their position again. They admitted that to the extent Pendergraft's claim was based on negligent design, there was exposure under their policies. They maintained, however, that Home must prove what portion of the $290,000 was paid to settle the allegation of design negligence.

■ It is plain that the British Insurers are asking the impossible. Home paid $290,000 to settle the case; there is no way to divide this figure into constituents representing Pendergraft's "design" theory, "manufacturing" theory, "construction" theory, and the like. Indeed, the case is in the same posture as if a general verdict had been returned in favor of Pendergraft. Thus there are only two possibilities: either Home must bear the entire $290,000 or Home and the British Insurers will be treated as coinsurers of the same risk and

the $290,000 will be apportioned according to the policies' other-insurance provisions. Guided by principles of equity and the particular facts of this case, *see Royal Globe Insurance Co. v. Aetna Insurance Co.,* 82 Ill.App.3d at 1006, 38 Ill.Dec. at 452, 403 N.E.2d at 683; *Republic Underwriters Insurance Co. v. Fire Insurance Exchange,* 655 P.2d 544, 545–46 (Okl.1982), we select the latter option.

First, there was but one explosion and Pendergraft suffered one set of damages. Although the British Insurers indemnified UOP only against claims of design negligence, if such negligence was the cause of the explosion, then the British Insurers' policies would fully apply. Because we are entitled to assume that Pendergraft could have prevailed on his design negligence claim, *see National Surety Corp. v. Western Fire & Indemnity Co.,* 318 F.2d 379 (5th Cir.1963); 16 *Couch on Insurance* § 62.154 (2d ed. 1983), it follows that Home and the British Insurers had the same maximum exposure from the Pendergraft suit.

Second, we believe that the British Insurers are estopped from asserting that their policies did not cover Pendergraft's claim. *See Coulter v. American Employers' Insurance Co.,* 333 Ill.App. 631, 78 N.E.2d 131 (1948). When asked to participate in the settlement, the British Insurers refused on the ground that Pendergraft's claim was not made prior to April 1, 1972—the date the policies expired. The British Insurers did not hint that they would assert non-coverage as a reason for resisting contribution. The record demonstrates that Home discounted the assertion that Pendergraft's claim was made after April 1, 1972, and, accordingly, paid $290,000 with a view to bringing a successful contribution action against the British Insurers. Had the British Insurers declared non-coverage as a reason for not performing, Home's strategy might have been different. *See generally Florsheim v. Travelers Indemnity Co. of Illinois,* 75 Ill.App.3d 298, 304, 30 Ill.Dec. 876, 882, 393 N.E.2d 1223, 1229 (1979). Home's assessment of a contribution action might have changed and, thus,

Home might not have agreed to settle. At the least, Home could have structured the settlement in a way to facilitate the proof that the British Insurers now demand—i.e., what portion of the settlement was paid to extinguish the allegation of design negligence.

Finally, it is evident that the British Insurers erred in denying any exposure from the Pendergraft suit. Home, on the other hand, acknowledged its contractual duties from the start. The Illinois policy in such a case is clear: "Losses should not fall irrevocably upon that insurer which first recognizes its obligations, while one neglectful of its duty is allowed to escape." *New Amsterdam Casualty Co. v. Certain Underwriters*, 34 Ill.2d 424, 431, 216 N.E.2d 665, 669 (1966). We conclude, therefore, that Home and the British Insurers should be treated as co-insurers of the same risk.

### B.

The British Insurers make two trifling arguments in their attempt to avoid liability. They contend that because UOP did not consent to the settlement and did not pay the $100,000 deductible itself, they are completely absolved from their obligations. We summarily reject these defenses.

■ The British Insurers' policies do state that a claim against UOP cannot be settled without UOP's consent. In this case, however, the British Insurers never sought UOP's approval. Moreover, UOP, in authorizing Royal and Home to settle the Pendergraft claim, did consent to the settlement.

■ A $100,000 deductible clause was also contained in the British Insurers' policies. The British Insurers, however, can cite no authority for their proposition that UOP was obliged to pay this amount itself, rather than obtain other insurance to protect against the exposure. We agree with the district court that there is "no reason why UOP should be prohibited from insuring itself against the initial $100,000 exposure and that, of course, is precisely what it did when it obtained its primary policy from Royal."

### III.

Having concluded that Home and the British Insurers should be treated as co-insurers of the same risk, we must now decide how to apportion responsibility for the settlement. The district court concluded that the British Insurers should pay the entire $290,000. The court justified its decision on two grounds: (1) the British Insurers' policies are "specific risk" policies and thus provide primary coverage, and (2) the British Insurers' policies contain "escape" clauses and, consequently, must be exhausted first. We disagree with both rationales.

Home cites cases that, in deciding which of two policies is primary, look to the insured's intent; the insurer that more specifically covers the risk is primarily liable. *See, e.g., Berkeley v. Fireman's Fund Insurance Co.*, 407 F.Supp. 960 (W.D.Wash. 1975). However, the Illinois courts reject this theory of apportionment as "unworkable and unreasonable." *Putnam v. New Amsterdam Casualty Co.*, 48 Ill.2d 71, 78, 269 N.E.2d 97, 100 (1970). In any event, we are unable to term the British Insurers' policies more specific than Home's. For instance, Home's policy covers personal injuries and property damage, but not economic losses owing to design defects. The British Insurers, on the other hand, did provide coverage for claims of economic loss. Allocation of the $290,000, therefore, must be made by reference to the policies' "other insurance" clauses. *See id.*

■ The two most common other-insurance clauses are "excess" and "escape" provisions. An excess clause affords coverage only "over and above" other insurance. An escape clause, on the other hand, purports to hold the policy void with respect to any risk covered by other insurance. In Illinois, if co-insurers have different clauses, the " 'excess' clause prevails over [the] 'escape' clause." *Associated Indemnity Co. v. Insurance Company of North America*, 68 Ill.App.3d 807, 819, 25

Ill.Dec. 258, 267, 386 N.E.2d 529, 538 (1979). That is, the insurer with the escape clause is primarily liable. *See Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co.*, 49 Ill.2d 108, 273 N.E.2d 360 (1971). If two applicable policies contain excess clauses, however, "such provisions are to be disregarded as being mutually repugnant and each company is liable for a pro rata share of the liability." *Economy Fire & Casualty Co. v. Western States Mutual Insurance Co.*, 49 Ill.App.2d 59, 65, 198 N.E.2d 723, 727 (1964); *accord Truck Insurance Exchange v. Liberty Mutual Insurance Co.*, 102 Ill.App.3d 24, 26, 57 Ill.Dec. 503, 505, 428 N.E.2d 1183, 1185 (1981).

We read all the policies in this case as containing excess clauses. Home's policy states that "[i]f other valid and collectible insurance with any other insurer is available to the insured, ... the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance." Similarly, the British Insurers' first-layer policy states that:

> There shall be no liability hereunder in respect of any claim which is insured by, or would, but for the existence of this Policy, be insured by any other existing policy except in respect to *any excess* beyond the amount which would have been payable under such other policy or policies had this Policy not been effected.

(Emphasis added). And the British Insurers' other two layers of coverage are written on a "net loss" basis. That term is defined as "the sum actually paid by the Assured in settlement of losses or liability after making deduction for all recoveries, all salvages *and all claims upon other Insurance.*" (Emphasis added).

 Because Home's and the British Insurers' policies contain excess clauses, the parties must share responsibility for the $290,000 settlement. Unfortunately, neither side has briefed the question how to prorate the amount.[3] The case must be

remanded, therefore, for further proceedings to determine the precise amount that the British Insurers must contribute.

### IV.

The judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion. The district court is also directed not to award Home prejudgment interest. *See Continental Casualty Co. v. American Fidelity & Casualty Co.*, 275 F.2d 381, 385–86 (7th Cir.1960). Circuit Rule 18 shall not apply and the parties shall bear their own costs on appeal.

---

**3.** This might be so because the extent of the coverage provided by the British Insurers is not in the record. *See supra* note 2.